**2015 UT App 196**

## THE UTAH COURT OF APPEALS

HIGH DESERT ESTATES LLC AND BRETT FOLKMAN,
Plaintiffs and Appellants,
*v.*
PATRICIA ARNETT AND CATHERINE ARNETT,
Defendants and Appellees.

Opinion
No. 20140146-CA
Filed August 6, 2015

Fifth District Court, St. George Department
The Honorable James L. Shumate
No. 090502405

Justin R. Elswick and Justin D. Heideman, Attorneys
for Appellants

N. Adam Caldwell and Bryson R. Brown, Attorneys
for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and JOHN A. PEARCE
concurred.

CHRISTIANSEN, Judge:

¶1     High Desert Estates LLC and Brett Folkman appeal from
the trial court's ruling that they had failed to demonstrate
mutual mistake in the formation of a real estate purchase
contract. Because the record evidence supports the trial court's
ruling, we affirm.

BACKGROUND

¶2     This case concerns a parcel of land in Veyo, Utah, that
Catherine Arnett sold to Brett Folkman (the Property). Folkman
is a managing member of High Desert Estates LLC. High Desert

owns a large tract of land adjacent to the Property, which it sought to develop. To facilitate development, High Desert sought an easement from adjacent landowners, including Patricia and Catherine Arnett,[1] to build a road connecting High Desert's property to the nearby public highway. When none of the landowners were willing to grant an easement to High Desert, High Desert approached the Arnetts to purchase the Property. Folkman executed a real estate purchase contract for the Property (the REPC) in June 2007, and he recorded an easement in favor of High Desert across the Property in October 2007.[2]

¶3     In early 2009, Folkman contacted the county regarding the Property's suitability for building houses. He discovered that a previous owner had subdivided the Property from a larger parcel without recording a subdivision plat amendment, in violation of county ordinances. This improper subdivision prevented Folkman from building houses on the Property. High Desert and Folkman (collectively, the Developers) filed a complaint seeking rescission of the REPC, arguing that there was a mutual mistake between the parties regarding whether a house could be built on the Property "as is"—without further zoning modifications or plat amendments.[3] The REPC contains no

_____

1. Though Patricia Arnett did not own the Property, she met with representatives from High Desert to discuss the sale of the Property and otherwise acted at times as an agent for Catherine Arnett. We therefore refer to the two collectively as the Arnetts except where the distinction is material to our analysis.

2. Initially High Desert itself sought to purchase the property from the Arnetts. However, before the contract was executed, Folkman substituted himself as the purchaser and executed the REPC in his own name.

3. The Developers also raised a number of other claims, all of which were dismissed or denied by the trial court. The

                                                            (continued)

warranties or representations regarding the suitability of the Property for building houses.

¶4     The case proceeded to a bench trial, and the trial court ruled that the Developers had failed to prove a mutual mistake that would justify rescission of the REPC. First, the court determined that because the parties were sophisticated buyers and sellers of real estate, they could be properly charged with constructive knowledge of both the recorded documents—the plat map describing the Property as recorded—and the relevant zoning ordinances. The court therefore found that the parties had constructive knowledge that absent a replatting or rezoning of the Property, "the zoning laws and designations in effect at the time of purchase proscribed building homes on [the Property]." Second, the court found that even if the parties were mistaken about whether a house could be built on the Property, the Developers had not proven that the Property's suitability for building a house "as is" was a "basic assumption or vital fact upon which the parties based their bargain or that the mistake related to a material feature of the parties' agreement." The Developers appeal from the trial court's ruling.


ISSUES AND STANDARDS OF REVIEW

¶5     First, the Developers argue that this court lacks jurisdiction to hear the appeal because the trial court's order is nonfinal. "The question of whether an order is final and appealable is a question of law." *Powell v. Cannon*, 2008 UT 19, ¶ 9, 179 P.3d 799 (citation omitted). We therefore decide as a matter of law whether the trial court's order is a final judgment and whether we have jurisdiction over this appeal.

---

(…continued)
Developers have not challenged the trial court's rulings on any of these claims, and they are therefore not relevant to this appeal.

¶6     The Developers next argue that the trial court erred in finding that the Developers had not proven a mutual mistake justifying rescission of the REPC. A trial court's findings of fact will be set aside only if clearly erroneous. *Vandermeide v. Young*, 2013 UT App 31, ¶ 14, 296 P.3d 787. We will therefore affirm the trial court's findings unless they are "'against the clear weight of the evidence'" or we reach "'a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

ANALYSIS

I. The Trial Court's Order Is Final and Appealable.

¶7     As a threshold issue, we address the Developers' argument that we lack jurisdiction over this appeal because the trial court's order is not final and appealable. Generally, a party may appeal only "'final orders and judgments' from a district or juvenile court, except as otherwise provided by law." *Powell v. Cannon*, 2008 UT 19, ¶ 11, 179 P.3d 799 (quoting Utah R. App. P. 3(a)). "The final judgment requirement is jurisdictional," and if the order appealed from fails to satisfy this requirement, "we lack jurisdiction over the appeal and must dismiss it." *Id.* ¶ 12.

¶8     After trial, the Arnetts submitted a proposed order. Seven days later, the Developers filed an objection to the proposed order. Two days after that, the trial court signed the proposed order and entered the final judgment. The Developers argue that because the trial court never explicitly ruled on the Developers' objection, that objection "is still pending and remains unresolved," and the trial court's order is therefore nonfinal.

¶9     This court rejected that very argument in *Western States Development, Inc. v. Prestige Cleaners, Inc.*, 2011 UT App 174, 254 P.3d 773 (per curiam). There, Prestige Cleaners, the appellant, contended that "there [was] no final, appealable order because the district court never resolved its objection to the proposed

order." *Id.* ¶ 3. We explained that this court "treats such objections as having been implicitly overruled by the entry of the proposed order." *Id.* Thus, we held that "the entry of the order by the district court implicitly overruled Prestige Cleaners's objections to that order." *Id.*

¶10 Here, the Developers filed an objection to the proposed order. The trial court signed and entered the proposed order two days later. As in *Western States*, the trial court's signing and entry of the proposed order implicitly overruled the Developers' objection. *See id.* The trial court's order is therefore final, and we conclude that we have jurisdiction to consider the merits of the Developers' appeal.

II. The Record Evidence Supports the Trial Court's Findings.

¶11 The Developers next argue that the trial court erred in finding that they had not proven the elements of mutual mistake. "A party may rescind a contract when, at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract." *GeoNan Props., LLC v. Park-Ro-She, Inc.*, 2011 UT App 309, ¶ 12, 263 P.3d 1169 (citation and internal quotation marks omitted). The proponent of a mutual-mistake claim must prove the elements by clear and convincing evidence. *Vandermeide v. Young*, 2013 UT App 31, ¶ 12, 296 P.3d 787. The trial court here found that the Developers had failed to prove by clear and convincing evidence either that the parties made a mutual mistake in the formation of the REPC or that any such mistake was material to their agreement.

¶12 We first address the Developers' challenge to the trial court's finding that any mistake regarding the Developers' ability to build a house on the Property "as is" was immaterial to the parties' agreement. To prevail on this point, the Developers must demonstrate that "'the finding is without adequate evidentiary support or induced by an erroneous view of the law.'" *Id.* ¶ 14 (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah

1987)). However, "[t]he existence of conflicting evidence does not give rise to clear error as long as evidence supports the trial court's decision." *Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 60, 288 P.3d 1046 (citation and internal quotation marks omitted). Thus, we will not reweigh the evidence presented at trial but will instead "defer to the trial court's advantaged position to weigh that conflicting evidence" absent a showing that the trial court's findings lack evidentiary support. *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 18, 305 P.3d 196.

¶13 The trial court made a number of subsidiary findings pertinent to this issue, including findings that the Developers purchased the Property "to serve as a conduit or second access to the High Desert Property"; that the evidence "preponderates, but is not clear and convincing, that [the Developers] also contemplated building homes on [the Property]"; and that any plans to build homes on the Property "did not necessarily require that [the Property] be buildable 'as is,' i.e., buildable without a zoning change or plat amendment." The trial court therefore concluded that "there is not clear and convincing evidence that a material feature or basic assumption of the parties' agreement was [the Property] being buildable 'as is,' i.e., buildable without a plat amendment or zoning change." There is sufficient evidence in the record to support the court's findings. Specifically, Patricia Arnett testified that the Developers sought to obtain either an easement or ownership of the Property to build a road for access to High Desert's property, that an agent of the Developers told her that the Developers were "just going to include [the Property] as part of the whole subdivision plat," and that the same agent suggested that the ability to build houses on the Property itself "would just be a bonus."

¶14 The Developers have not attempted to demonstrate that the trial court's findings lack legally sufficient evidentiary support. Instead, the Developers merely cite other evidence that could support a finding in their favor and assert that "[t]he facts and testimony cited . . . establish[] by clear and convincing evidence that the ability to build a home on [the Property] was a

crucial and material aspect of the negotiations." But we will not reweigh the conflicting evidence so long as there is evidence to support the trial court's findings. *Hale*, 2012 UT App 283, ¶ 60. We therefore conclude that the Developers have failed to demonstrate that the trial court clearly erred in finding that the ability to build on the Property "as is" was not a material feature of the parties' agreement.

¶15   Because the trial court's finding regarding materiality is supported by the evidence, we need not address the Developers' argument that the trial court clearly erred in finding there was no mistake. The Developers' failure to prove that the alleged mistake was material to the parties' agreement is fatal to their claim for mutual mistake. *See GeoNan Props.*, 2011 UT App 309, ¶ 12. We therefore affirm the trial court's determination that the Developers failed to prove mutual mistake by clear and convincing evidence.

### III. The Arnetts Are Entitled to Attorney Fees Incurred on Appeal.

¶16   The Arnetts have requested an award of their attorney fees reasonably incurred on appeal. Generally, "when a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." *Dillon v. Southern Mgmt. Corp. Ret. Trust*, 2014 UT 14, ¶ 61, 326 P.3d 656 (citation and internal quotation marks omitted). The trial court concluded that the Arnetts were "entitled to costs and attorney fees under the REPC." Because the Arnetts have prevailed on appeal, they are also entitled to an award of their attorney fees reasonably incurred on appeal.

### CONCLUSION

¶17   The trial court's signing and entry of the proposed order implicity overruled the Developers' objection to that order. The trial court's order was therefore final, and we have jurisdiction

to consider the merits of this appeal. We conclude that the trial court did not clearly err in finding that the Developers failed to prove mutual mistake by clear and convincing evidence. We therefore affirm the trial court's order, and we remand to the trial court to calculate and award to the Arnetts the amount of attorney fees they reasonably incurred on appeal.

––––––––––